**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Jose Antonio HERRERA, Defendant—
Appellant.**

No. 05–10829.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2006.

Filed Dec. 7, 2006.

---

carriers, CCAir and Mesa, is purely coincidental.

* Rob McKenna is substituted for his predecessor, Christine Gregoire, as Attorney General of the State of Washington, Fed. R.App. P. 43(c)(2).

** The Honorable Lynn B. Winmill, Chief United States District Judge for the District of Idaho, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Craig S. Denney, Esq., USRE—Office of the U.S. Attorney, Reno, NV, Robert L. Ellman, Esq., USLV—Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Mary E. Boetsch, Esq., Sinai, Schroeder, Mooney & Boetsch, Reno, NV, for Defendant–Appellant.

Before: B. FLETCHER and BERZON, Circuit Judges, and TRAGER *, District Judge.

## MEMORANDUM **

Jose Antonio Herrera ("Herrera") was convicted, after a three-day jury trial, of one count of conspiracy "to possess with intent to distribute and to distribute" methamphetamine and five counts of distribution of methamphetamine. Herrera now appeals his conviction and sentence. This court has jurisdiction pursuant to 28 U.S.C. § 1291 (appeal of a final decision of a district court); and 18 U.S.C. § 3742(a) (appeal of a final decision regarding a sentence). For the following reasons the conviction is affirmed.

Familiarity with the facts is assumed.

## I. Entrapment Instruction

■ Herrera claims that the district court did not adequately instruct the jury on his theory of the case, namely sentencing entrapment. Sentencing entrapment "occurs when 'a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment.'" *United States v. Staufer*, 38 F.3d 1103, 1106 (9th Cir.1994) (holding that sentencing entrapment was a valid reason to downwardly depart under the Guidelines) (quoting *United States v. Stuart*, 923 F.2d 607, 614 (8th Cir.1991)). Herrera argues that the district court's instruction concerning entrapment was overly broad and did not adequately instruct the jury in the subtler issues of predisposition presented by his sentencing entrapment defense.

In this case, the district court's instruction on the issue of entrapment was almost identical to the Ninth Circuit's model jury instruction, Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 6.2 (2003), except the district court added an erroneous, but favorable requirement, to wit, the government had the burden to disprove entrapment beyond a reasonable doubt on each element of the crime. The Ninth Circuit Model Criminal Jury Instruction 6.2 states that the government must show that the defendant was "predisposed to commit the crime" or that the government did not induce the defendant to commit the crime; it makes no mention of the individual elements of the crime. *Id.* This slight variation is important because the entrapment instruction was presented immediately after the district court had instructed the jury that the weight of the drugs was an element of the distribution charges that the government had to prove. As a result, Herrera was free to argue, as he did in closing argument, that the government had failed to prove that he was predisposed to sell the quantity of methamphetamine that he ultimately sold. With the addition of the element-specific part of the instruction, the entrapment instruction adequately presented Herrera's theory.[1] It was, therefore, not an abuse of discretion for the district court to choose to not give the precise formulation espoused by Herrera. *United States v.*

* The Honorable David G. Trager, District Court Judge, Eastern District of New York, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. We do not decide whether a jury—as opposed to a judge at sentencing—should be able to consider sentencing entrapment as a valid justification defense. *See Staufer*, 38 F.3d at 1108 (finding sentencing entrapment a valid reason to depart from the Guidelines); *cf. United States v. Ryan*, 289 F.3d 1339, 1342–43 (11th Cir.2002) (questioning the validity of the sentencing entrapment defense after *Apprendi*, but ultimately not reaching the question because the defense would fail).

*Somsamouth,* 352 F.3d 1271, 1274 (9th Cir. 2003).

## II. The Conspiracy Conviction

Herrera also argues that he should not have been convicted of the single conspiracy with which he was charged. According to Herrera, the government proved the existence of two separate conspiracies, not the single conspiracy it charged and the jury found. He characterizes this argument as a claim of "insufficient evidence to support the verdict."

A claim of insufficient evidence is reviewed *de novo. United States v. Decoud,* 456 F.3d 996, 1014 (9th Cir.2006). A conviction will be affirmed if the evidence, viewed in the light most favorable to the government, shows that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotations omitted). Here a conspiracy conviction was proved, but not the single conspiracy charged in the indictment.

To demonstrate the existence of a single conspiracy, the government must prove: (1) "that an overall agreement existed among the conspirators," *United States v. Duran,* 189 F.3d 1071, 1080 (9th Cir.1999) (internal quotations omitted); and (2) that "each defendant knew, or had reason to know, that his benefits were probably dependent upon the success of the entire operation." *Id.* (internal quotations and ellipse omitted). The inference that a defendant knew his benefits were dependent upon the group "may be drawn from proof that the co-conspirators knew of each other's participation or actually benefitted from the activities of his co-conspirators." *Id.*

■ In the present matter, the government argues that Nye and Jimenez, Herrera's alleged co-conspirators, benefitted one another by selling to the same people, Herrera and Theodoratos, because each

sale would increase the quantity of drugs that Herrera could sell, and he would then presumably buy larger quantities for resale. This thesis, however, is insufficient, on its own, to show that all four were involved in a single conspiracy. The idea that a conspiracy can exist solely because two people deal with the same middleman, but act independently, was previously rejected in *United States v. Durades,* 607 F.2d 818, 819–20 (9th Cir.1979) ("The government succeeded in proving that Lugo was the hub of the two separate conspiracies but failed to show that there was some kind of rim binding the spokes.").

In this case, the only connection between Nye and Jimenez that the government proved was that they both sold to Herrera and Theodoratos. The government failed to show "some kind of rim binding" Nye to Jimenez. *Id.* It did not show that Nye was aware Jimenez was dealing with Herrera, let alone that Nye ever received any benefit from those dealings. *See Duran,* 189 F.3d at 1081 (holding that two conspiracies existed where the members of the second conspiracy did not know about the first conspiracy, did not benefit from the first conspiracy, and were connected with the first conspiracy only through a middleman). Thus, as Herrera claims, the government did not prove one conspiracy involving Herrera, Theodoratos, Jimenez and Nye. Rather, the evidence presented shows two separate conspiracies.

■ Nonetheless, this circumstance does not require a reversal of the conviction. *See id.* at 1081–83 (holding that the conviction should be affirmed despite the existence of two conspiracies where the indictment charged only one, because this variance did not prejudice the defendant). While, as noted, Herrera claimed the evidence was insufficient for the single conspiracy, the evidence was more than ample

to convict him of both conspiracies had they been separately charged. In his brief, Herrera essentially concedes this point. And, under either or both conspiracies Herrera could have been convicted of the same offenses, since the conspiracies with both Nye and Jimenez separately involved combined weights over 50 grams of methamphetamine.

■ Herrera's argument is actually one of variance, in that the evidence presented at trial proved that he was a part of two conspiracies, rather than the one conspiracy with which he was charged. A variance "warrants reversal only if it affects the substantial rights of the parties." *Id.* at 1081 (internal quotations omitted); *see also Berger v. United States*, 295 U.S. 78, 82–83, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (holding that the conviction should be upheld because there was no prejudice to the defendant, even though the defendant had been charged with one conspiracy, and the proof at trial showed two separate conspiracies); *United States v. Miller*, 471 U.S. 130, 135, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (upholding conviction where the defendant was not prejudiced by a variance between the frauds charged in the indictment and the narrower, but included, fraud for which he was convicted). The only claim that Herrera makes concerning how the variance in this case prejudiced his rights is based on the idea that there was an evidentiary spillover effect between the conspiracies charged. *See Duran*, 189 F.3d at 1081–83 (evaluating an evidentiary spillover issue). He claims that certain witnesses' testimony would not have come in had he been charged with two separate conspiracies. His brief, though, does not adequately explain why this testimony would not have come in. Moreover, this argument ignores the important fact that there is ample evidence supporting his participation in each of the two conspiracies.

Thus, whatever risk existed that the jury's findings concerning the drug quantities involved in the conspiracies suffered from some evidentiary spillover between the conspiracies, the risk was slight given the overall strength of the evidence connecting Herrera to the two conspiracies. *See United States v. Wright*, 932 F.2d 868, 876 (10th Cir.1991) (dismissing the defendant's variance argument "by simply stating that the evidence underlying his conviction for *either* conspiracy was strong enough that any prejudice arising from the variance was harmless"), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir.2006). In addition to the in-court testimony, which included not just the cooperators but also the undercover agent, the government also played for the jury the taped conversations from the wiretap. In a number of these conversations, Herrera specifically discussed the drug quantities involved.

Furthermore, this case does not present a situation such as the one the Supreme Court considered in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), where a conviction was overturned because there was too great a risk of evidentiary spillover, in part because there were thirty-two named participants and eight separate conspiracies. In the present matter there were only six named participants, two conspiracies and two defendants on trial. *See United States v. Edwards*, 69 F.3d 419, 433 (10th Cir.1995) (holding that the jury would have no problem separating the actions of the individual defendants where there were only four defendants and two separate conspiracies). Given the strength of this evidence for either conspiracy, any potential spillover effect concerning the drug quantities did not prejudice Herrera in any way.

In sum, despite the fact that the government actually proved two separate conspir-

acies and not the single conspiracy charged, there is no risk that the jury convicted Herrera for a conspiracy or for transactions in which he did not participate. *See United States v. Morse,* 785 F.2d 771, 775 (9th Cir.1986) (holding that there could be no risk of spillover evidence where there was significant proof that both defendants participated in all the transactions). Accordingly, this variance did not prejudice Herrera and the conviction is affirmed.

### III. Sentencing

Herrera's remaining claim, that when sentencing him the district court should have considered the sentences of the co-defendants who cooperated, is without merit and will not be discussed here.

**AFFIRMED.**